FILED
Dec 09, 2019
02:27 PM(CT)
TENNESSEE COURT OF
WORKERS' COMPENSATION
CLAIMS



# TENNESSEE BUREAU OF WORKERS' COMPENSATION
# IN THE COURT OF WORKERS' COMPENSATION CLAIMS
# AT MURFREESBORO

| | | |
|---|---|---|
| **WILLIAM BARNES,** | ) | **Docket No. 2018-05-1127** |
| Employee, | ) | |
| v. | ) | |
| **JACK COOPER TRANSPORT CO.,** | ) | **State File No. 53470-2018** |
| Employer, | ) | |
| And | ) | |
| **CONTINENTAL INDEM. CO./** | ) | **Judge Dale Tipps** |
| **APPLIED UNDERWRITERS, INC.,** | ) | |
| And | ) | |
| **NATIONAL INTERSTATE INS. CO.,** | ) | |
| Carriers. | ) | |

---

## EXPEDITED HEARING ORDER GRANTING BENEFITS

---

This case came before the Court on November 26, 2019, for an Expedited Hearing on whether Mr. Barnes is entitled to additional medical and temporary disability benefits. To receive these benefits, Mr. Barnes must show that his current need for a knee replacement arose primarily out of and in the course and scope of his employment. For the reasons below, the Court holds Mr. Barnes is likely to meet this burden and is entitled to the requested medical benefits. However, he is not entitled to the requested temporary disability benefits.

### History of Claim

Mr. Barnes has a history of left-knee problems, including a work injury in 2013.[1]

---

[1] Mr. Barnes worked for Jack Cooper in 2013, which Continental Indemnity insured at the time. Continental provided workers' compensation benefits for the 2013 work injury, and the case settled with open medical benefits. Because Mr. Barnes felt his current need for treatment might be related to the old injury, he named Continental in his Petition for Benefit Determination. None of the parties properly moved to dismiss Continental from this action before the Expedited Hearing, but the Court will not address that part of Mr. Barnes's claim because it has no jurisdiction over the 2013 injury.

1

Records from Seven Springs Sports Medicine showed he had surgery to repair a meniscal tear. An MRI from that time also showed degenerative osteoarthritis, which was not work-related.

Mr. Barnes testified that he recovered from his 2013 surgery and never had any pain in his left knee or problems working until July 10, 2018. On that day, he reinjured his knee while climbing a ladder at work. Mr. Barnes reported the injury, and Jack Cooper began providing medical treatment.

Mr. Barnes's initial providers at Concentra prescribed physical therapy and assigned light-duty restrictions but soon referred him to an orthopedist. Jack Cooper provided a panel, and Mr. Barnes selected Dr. David Moore, who declined to treat him. Mr. Barnes requested a replacement for Dr. Moore on the panel, but Jack Cooper refused. He therefore chose Dr. Blake Garside from the two physicians remaining on the panel.

After examining Mr. Barnes on September 5, Dr. Garside assessed exacerbation of pre-existing osteoarthritis. He injected the knee, assigned restrictions, and told Mr. Barnes to return in one month. At that next visit, Dr. Garside reiterated his belief that the current symptoms "represent exacerbation of his pre-existing osteoarthritis." He recommended viscosupplementation and continued the work restrictions. According to Mr. Barnes, Dr. Garside told him he would need a total knee replacement, but he said it would need to be paid under the open medical benefits from his earlier claim.

Soon after, Jack Cooper denied Mr. Barnes's claim, so he sought treatment at Seven Springs Sports Medicine, the practice that treated him in 2013. He saw physician assistant Brian Masterson, who assessed degenerative joint disease and chondromalacia. He also noted the July MRI suggested a recent ACL sprain.

The parties sent causation letters to both of Mr. Barnes's doctors. Dr. Garside's April 1, 2019 response states, "There was no obvious aggravation or anatomic change associated with the July 2018 incident at work." He concluded:

> [T]he last incident of July 10, 2018, did not contribute more than 50% in causing the need for Mr. Barnes to undergo a total knee arthroscopy and . . . did not contribute more than 50% in causing his current left knee issues, which are related to preexisting left knee osteoarthritis.

Dr. Jason Jones, of Seven Springs, wrote a letter[2] on November 4, 2019, stating:

---

[2] Jack Cooper questioned whether this letter was written by Dr. Jones or one of the physician assistants. However, the letter bears what purports to be the signature of Dr. Jones, and Jack Cooper introduced no evidence to the contrary. Consequently, the letter is admissible at this interlocutory stage under Tennessee Compilation Rules and Regulations 0800-02-21-.15(2) (2019).

It is my opinion the second injury is the cause of his ongoing pain despite having underlying osteoarthritis since the first injury which was remedied surgically. He ultimately needs total knee arthroplasty and I would agree with Dr. [Garside] on this treatment plan. He clearly is in need of surgical intervention and will likely not get sustained relief from conservative measures. At this point, I believe his second injury is the cause for his ongoing pain, which was an exacerbation of osteoarthritis.

Dr. Jones added that Mr. Barnes could not return to work "at a high level of activity" until he had the knee replacement.

Dr. Garside gave his deposition and provided a detailed explanation of the extent and nature of Mr. Barnes's pre-existing osteoarthritis. Questioned at length about his causation opinion, Dr. Garside steadfastly maintained that Mr. Barnes's 2018 work incident did not contribute more than fifty percent in the need for knee replacement.

At the hearing, Mr. Barnes requested medical benefits, including knee replacement surgery, and temporary disability benefits. He contended that because he worked five years without problems after his 2013 surgery, it was obvious that his current problems were the result of his 2018 injury. He also pointed out that an employer takes an employee as it finds him, which would include his preexisting osteoarthritis.

Jack Cooper contended that Mr. Barnes is not entitled to additional benefits. It provided several arguments as to why Mr. Barnes failed to prove he is likely to establish that he suffered an injury that arose primarily out of and in the course and scope of his employment. First, Jack Cooper contended Dr. Garside was a panel physician, whose opinion was entitled to a presumption of correctness. Next, even if Dr. Garside's opinion were not presumed correct, Dr. Jones's opinion failed to address whether the work injury contributed more than fifty percent in causing the disablement or need for treatment. Jack Cooper also argued that Dr. Garside's opinion was more reliable because the Court had no information as to which medical records or facts Dr. Jones relied upon in formulating his opinion.

**Findings of Fact and Conclusions of Law**

Mr. Barnes must provide sufficient evidence from which this Court might determine he is likely to prevail at a hearing on the merits. *See* Tenn. Code Ann. § 50-6-239(d)(1) (2019); *McCord v. Advantage Human Resourcing*, 2015 TN Wrk. Comp. App. Bd. LEXIS 6, at *7-8, 9 (Mar. 27, 2015).

*Causation*

To prove a compensable injury, Mr. Barnes must show that his alleged injuries

3

arose primarily out of and in the course and scope of his employment. This includes the requirement that he must show, "to a reasonable degree of medical certainty that [the incident] contributed more than fifty percent (50%) in causing the . . . disablement or need for medical treatment, considering all causes." "Shown to a reasonable degree of medical certainty" means that, in the opinion of the treating physician, it is more likely than not considering all causes as opposed to speculation or possibility. *See* Tenn. Code Ann. § 50-6-102(14).

The Court first addresses Jack Cooper's contention that Dr. Garside's opinion is presumed correct. Tennessee Code Annotated section 50-6-102(14)(E) establishes a presumption of correctness for some causation opinions. However this presumption only applies to opinions of a treating physician "selected by the employee from the employer's designated panel of physicians pursuant to § 50-6-204(a)(3)." *Gilbert v. United Parcel Serv., Inc.*, 2019 TN Wrk. Comp. App. Bd. LEXIS 20, at *13 (June 7, 2019). While it is true that Mr. Barnes selected Dr. Garside from a list provided by Jack Cooper, the first doctor on the list had already refused to see him. Thus, in reality the panel only contained two physicians, which does not meet the statutory requirement of "a group of three or more independent reputable physicians." Therefore, the Court finds that Mr. Barnes did not select his treating doctor from a "designated panel of physicians pursuant to § 50-6-204(a)(3)." As a result, Dr. Garside's opinion is not presumed correct.

Absent a presumption of correctness, the Court must compare the opinions of the physicians. The Appeals Board explained:

> When the medical testimony differs, the trial judge must obviously choose which view to believe. In doing so, he is allowed, among other things, to consider the qualifications of the experts, the circumstances of their examination, the information available to them, and the evaluation of the importance of that information by other experts.

*Bass v. The Home Depot U.S.A., Inc.,* 2017 TN Wrk. Comp. App. Bd. LEXIS 36, at *9 (May 26, 2017).

Applying the first of these factors, the Court notes that the physicians are both orthopedic surgeons. Dr. Garside's CV was admitted as an exhibit to his deposition, and he is clearly a qualified expert. Although the Court does not have Dr. Jones's CV, none of the parties questioned the relative qualifications of the doctors. In the absence of any additional information, the Court cannot find any determinative differences between the doctors' respective qualifications.

As to the other factors, Dr. Garside saw Mr. Barnes twice. It is not clear how many times Dr. Jones saw him, but Mr. Barnes only went to the Seven Springs clinic twice for this injury. Mr. Barnes said Dr. Garside did not even examine him before

concluding his problems stemmed from his old injury. As noted above, Jack Cooper suggested Dr. Jones might not have authored his causation letter. In short, both doctors had similar opportunities to examine Mr. Barnes.

More importantly, while the circumstances of the respective examinations might be different, they are not determinative because they both yielded essentially the same diagnosis: exacerbation of pre-existing osteoarthritis. Likewise, the relevant information – history of osteoarthritis, MRI, and history of work injury – available to both doctors appears to be similar, if not identical. The only difference is the conclusion the doctors reached upon consideration of this information. Thus, on the surface, the doctors' opinions appear to be equally weighted.

However, live testimony by a lay witness may influence the trier of fact in the consideration of expert medical proof. *Caskey v. Powers Pizza, LLC,* 2015 TN Wrk. Comp. App. Bd. LEXIS 37, at *9 (Oct. 7, 2015). Mr. Barnes testified persuasively and credibly that he suffered none of his current symptoms until he reinjured his knee on July 10, 2018. Until that time, he had no pain and performed his job and other activities without problem or limitation. The Supreme Court has consistently held that an employee's assessment as to his or her own physical condition is competent testimony that is not to be disregarded. *Limberakis v. Pro-Tech Sec, Inc.,* 2017 TN Wrk. Comp. App. Bd. LEXIS 53, at *5-6 (Sept. 12, 2017).

In light of this unrebutted testimony, the Court finds Dr. Jones's opinion more persuasive. Mr. Barnes's work accident was the genesis of the symptoms that now make his knee replacement necessary. Even though the underlying condition is not work-related, the work injury converted a dormant, symptomless condition into a debilitating, painful one. Therefore, Mr. Barnes appears likely to prevail at trial in establishing a compensable aggravation of a pre-existing condition[3] that resulted in the need for the recommended medical treatment. *See Vercek v. YRC, Inc.*, 2017 TN Wrk. Comp. App. Bd. LEXIS 39, at *5-6 (June 6, 2017) (aggravation of a previously asymptomatic condition led directly to surgical recommendation).

Jack Cooper contended that Dr. Jones's opinion should be disregarded because it does not address the applicable legal standard of contributing "more than fifty percent (50%) in causing the . . . disablement or need for medical treatment." The Court disagrees. "[A] physician may render an opinion that meets the legal standard espoused in section 50-6-102(14) without couching the opinion in a rigid recitation of the statutory definition." *Panzarella v. Amazon.com, Inc.*, 2017 TN Wrk. Comp. App. Bd. LEXIS 30, at *14-15 (May 15, 2017). Dr. Jones stated that the work injury was "the cause" of Mr. Barnes's ongoing pain. He did not say the pain was partly caused or even mostly caused by the work incident. Instead, a straightforward reading of this statement indicates that

---

[3] Both doctors diagnosed exacerbation of pre-existing osteoarthritis.

the work injury was the sole cause of Mr. Barnes' current symptoms, which satisfies the greater than fifty-percent requirement. This constitutes "sufficient proof from which the trial court can conclude that the statutory requirements of an injury as defined in section 50-6-102(14) are satisfied." *Id.*

Jack Cooper also argued that *Gamble v. Miller Indus., Inc.*, 2017 TN Wrk. Comp. App. Bd. LEXIS 16 (Feb. 9, 2017), precludes an award of benefits to Mr. Barnes. In that case, the Board determined that benefits were not appropriate, even though the employee's pre-existing hip condition was asymptomatic before his accident. However, *Gamble* is distinguishable because the only medical proof was an opinion that the pre-existing condition was the primary cause for the recommended hip replacement. As noted above, Mr. Barnes's case is different because it involves two conflicting medical opinions, one of which supports Mr. Barnes's claim.

Finally, Jack Cooper suggested that because the knee replacement surgery at issue is a substantial cost to the employer, the Court should require more than a modicum of evidence before ordering benefits. It provided no legal authority for this argument, and the Court finds it unpersuasive. First, Mr. Barnes must prove by a preponderance of evidence that he is "likely to prevail at a hearing on the merits." This standard already requires more than just a modicum of proof. Next, to the extent Jack Cooper is proposing the Court should apply a more rigorous standard than "likely to prevail," it is not the place of this Court to ignore or supplant the statutory standard confirmed by the Appeals Board. Further, adopting the suggested approach might infer that lower-value claims do not merit careful judicial analysis or the Court's best efforts.

*Temporary Disability Benefits*

To receive temporary total disability benefits, Mr. Barnes must establish that (1) he became disabled from working due to a compensable injury; (2) a causal connection between his injury and his inability to work; and (3) his period of disability. *Jones v. Crencor Leasing and Sales*, 2015 TN Wrk. Comp. App. Bd. LEXIS 48, at *7 (Dec. 11, 2015). Mr. Barnes presented no evidence regarding the dates he received disability benefits or his compensation rate. As a result, the Court cannot determine his period of disability or the amount of any benefits due. Without this evidence, Mr. Barnes has not proven he is likely to succeed on a claim for temporary total disability benefits.

**IT IS, THEREFORE, ORDERED** as follows:

1. Jack Cooper Transport shall provide Mr. Barnes with medical treatment made reasonably necessary by his July 10, 2018 injury, including any recommended surgery. Dr. Garside shall continue as the authorized treating physician.

2. Mr. Barnes's request for temporary disability benefits is denied at this time.

6

3. This case is set for a Scheduling Hearing on February 27, 2020, at 9:00 a.m. You must call toll-free at 855-874-0473 to participate. Failure to call might result in a determination of the issues without your further participation. All conferences are set using Central Time.

4. Unless interlocutory appeal of the Expedited Hearing Order is filed, compliance with this Order must occur no later than seven business days from the date of entry of this Order as required by Tennessee Code Annotated section 50-6-239(d)(3). The Insurer or Self-Insured Employer must submit confirmation of compliance with this Order to the Bureau by email to WCCompliance.Program@tn.gov no later than the seventh business day after entry of this Order. Failure to submit the necessary confirmation within the period of compliance might result in a penalty assessment for non-compliance. For questions regarding compliance, please contact the Workers' Compensation Compliance Unit via email at WCCompliance.Program@tn.gov.

**ENTERED DECEMBER 9, 2019.**


_____
*Dale Tipps*
**Judge Dale Tipps**
**Court of Workers' Compensation Claims**



**APPENDIX**

Exhibits:
1. Affidavit of William Barnes
2. Joint Amended Medical Records
3. Transcript of deposition of Dr. Blake Garside
4. Settlement documents from 2013 injury

Technical record:
1. Petition for Benefit Determination
2. Dispute Certification Notice
3. Request for Expedited Hearing
4. Continental Indemnity's Pre-hearing Brief
5. Employer's Pre-hearing Statement
6. Memo in Support of Employee's Claim

## CERTIFICATE OF SERVICE

I certify that a copy of the Expedited Hearing Order was sent as indicated on December 9, 2019.

| Name | Certified Mail | Email | Service Sent To |
|------|----------------|-------|-----------------|
| Richard Dugger, Employee's Attorney | | **X** | Rldugger65@hotmail.com |
| Allen Grant, Employer's Attorney | | **X** | AGrant@eraclides.com |
| Sara Barnett, Attorney for Continental Indemnity Co. | | **X** | saraebarnett@spraginslaw.com |

_____

**Penny Shrum, Clerk of Court**
**Court of Workers' Compensation Claims**
**WC.CourtClerk@tn.gov**



<u>Expedited Hearing Order Right to Appeal:</u>

If you disagree with this Expedited Hearing Order, you may appeal to the Workers' Compensation Appeals Board. To appeal an expedited hearing order, you must:

1. Complete the enclosed form entitled: "Expedited Hearing Notice of Appeal," and file the form with the Clerk of the Court of Workers' Compensation Claims *within seven business days* of the date the expedited hearing order was filed. When filing the Notice of Appeal, you must serve a copy upon all parties.

2. You must pay, via check, money order, or credit card, a **$75.00 filing fee** *within ten calendar days* after filing of the Notice of Appeal. Payments can be made in-person at any Bureau office or by U.S. mail, hand-delivery, or other delivery service. In the alternative, you may file an Affidavit of Indigency (form available on the Bureau's website or any Bureau office) seeking a waiver of the fee. You must file the fully-completed Affidavit of Indigency *within ten calendar days* of filing the Notice of Appeal. **Failure to timely pay the filing fee or file the Affidavit of Indigency will result in dismissal of the appeal.**

3. You bear the responsibility of ensuring a complete record on appeal. You may request from the court clerk the audio recording of the hearing for a $25.00 fee. If a transcript of the proceedings is to be filed, a licensed court reporter must prepare the transcript and file it with the court clerk *within ten business days* of the filing the Notice of Appeal. Alternatively, you may file a statement of the evidence prepared jointly by both parties *within ten business days* of the filing of the Notice of Appeal. The statement of the evidence must convey a complete and accurate account of the hearing. The Workers' Compensation Judge must approve the statement before the record is submitted to the Appeals Board. If the Appeals Board is called upon to review testimony or other proof concerning factual matters, the absence of a transcript or statement of the evidence can be a significant obstacle to meaningful appellate review.

4. If you wish to file a position statement, you must file it with the court clerk within *ten business days* after the deadline to file a transcript or statement of the evidence. The party opposing the appeal may file a response with the court clerk *within ten business days* after you file your position statement. All position statements should include: (1) a statement summarizing the facts of the case from the evidence admitted during the expedited hearing; (2) a statement summarizing the disposition of the case as a result of the expedited hearing; (3) a statement of the issue(s) presented for review; and (4) an argument, citing appropriate statutes, case law, or other authority.

*For self-represented litigants: Help from an Ombudsman is available at 800-332-2667.*



# EXPEDITED HEARING NOTICE OF APPEAL

Tennessee Division of Workers' Compensation
www.tn.gov/labor-wfd/wcomp.shtml
wc.courtclerk@tn.gov
1-800-332-2667

Docket #: _____

State File #/YR: _____

**Employee** _____

v.

**Employer** _____

## Notice

Notice is given that _____

[List name(s) of all appealing party(ies) on separate sheet if necessary]

appeals the order(s) of the Court of Workers' Compensation Claims at _____

_____ to the Workers' Compensation Appeals

Board. [List the date(s) the order(s) was filed in the court clerk's office]

**Judge** _____

## Statement of the Issues

Provide a short and plain statement of the issues on appeal or basis for relief on appeal:

_____

_____

_____

## Additional Information

**Type of Case** [Check the most appropriate item]

☐ Temporary disability benefits
☐ Medical benefits for current injury
☐ Medical benefits under prior order issued by the Court

## List of Parties

**Appellant (Requesting Party):** _____ At Hearing: ☐Employer ☐Employee

Address: _____

Party's Phone: _____ Email: _____

Attorney's Name: _____ BPR#: _____

Attorney's Address: _____ Phone: _____

Attorney's City, State & Zip code: _____

Attorney's Email: _____

*\* Attach an additional sheet for each additional Appellant \**

Employee Name: _____ SF#: _____ DOI: _____

## Appellee(s)

**Appellee (Opposing Party):** _____ At Hearing: ☐ Employer ☐ Employee

Appellee's Address: _____

Appellee's Phone: _____ Email: _____

Attorney's Name: _____ BPR#: _____

Attorney's Address: _____ Phone: _____

Attorney's City, State & Zip code: _____

Attorney's Email: _____

*\* Attach an additional sheet for each additional Appellee \**

## CERTIFICATE OF SERVICE

I, _____, certify that I have forwarded a true and exact copy of this
Expedited Hearing Notice of Appeal by First Class, United States Mail, postage prepaid, to all parties
and/or their attorneys in this case in accordance with Rule 0800-02-22.01(2) of the Tennessee Rules
of Board of Workers' Compensation Appeals on this the _____ day of _____, 20 ___

[Signature of appellant or attorney for appellant] _____



## AFFIDAVIT OF INDIGENCY

I, _____, having been duly sworn according to law, make oath that because of my poverty, I am unable to bear the costs of this appeal and request that the filing fee to appeal be waived. The following facts support my poverty.

1. Full Name:_____   2. Address: _____

3. Telephone Number: _____   4. Date of Birth: _____

5. Names and Ages of All Dependents:

_____ Relationship: _____

_____ Relationship: _____

_____ Relationship: _____

_____ Relationship: _____

6. I am employed by: _____

   My employer's address is: _____

   My employer's phone number is: _____

7. My present monthly household income, after federal income and social security taxes are deducted, is:

$ _____

8. I receive or expect to receive money from the following sources:

| | | | |
|---|---|---|---|
| AFDC | $ _____ per month | beginning | _____ |
| SSI | $ _____ per month | beginning | _____ |
| Retirement | $ _____ per month | beginning | _____ |
| Disability | $ _____ per month | beginning | _____ |
| Unemployment | $ _____ per month | beginning | _____ |
| Worker's Comp. | $ _____ per month | beginning | _____ |
| Other | $ _____ per month | beginning | _____ |

9. My expenses are:

Rent/House Payment $ _____ per month      Medical/Dental  $ _____ per month

Groceries        $ _____ per month       Telephone      $ _____ per month

Electricity      $ _____ per month       School Supplies $ _____ per month

Water            $ _____ per month       Clothing        $ _____ per month

Gas              $ _____ per month       Child Care      $ _____ per month

Transportation  $ _____ per month        Child Support   $ _____ per month

Car              $_____ per month

Other            $ _____ per month (describe: _____ )

10. Assets:

Automobile            $ _____        (FMV) _____

Checking/Savings Acct. $ _____

House                 $ _____        (FMV) _____

Other                 $ _____        Describe: _____

11. My debts are:

Amount Owed                 To Whom

_____        _____

_____        _____

_____        _____

_____        _____

**I hereby declare under the penalty of perjury that the foregoing answers are true, correct, and complete and that I am financially unable to pay the costs of this appeal.**

_____
APPELLANT

Sworn and subscribed before me, a notary public, this

_____ day of _____, 20_____.

_____
NOTARY PUBLIC

My Commission Expires: _____

LB-1108 (REV 11/15)                                      RDA 11082